### KEYSTONE STRUCTURAL CO. v. LINK-BELT CO.

(District Court, E. D. Pennsylvania. April 22, 1920.)

No. 5420.

Contracts ⬦═232(7)—Compensation for building bridge held not increased by change merely requiring more material.

Where plaintiff contracted to furnish material and build a bridge in accordance with certain plans and specifications, payment to be made on the basis of the weight of material used, and on a later change of the plans, requiring a materially longer bridge and more material, but of the same kind, plaintiff without objection proceeded and built the bridge, the price *held* measured by the contract.

⬦═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by the Keystone Structural Company against the Link-Belt Company. Sur judgment on verdict. Memorandum to supplement record.

M. Hampton Todd, of Philadelphia, Pa., for plaintiff.
John Kent Kane, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. To expedite an appellate ruling in this case, it is proposed to take an appeal directly from any judgment which may be entered upon the verdict rendered, without an intervening motion for a new trial. The following statement of the views which controlled the instructions given to the jury is made to supplement the record:

The grounds of the ruling may best be presented by a contrast of the respective positions of the parties. The cause of action set forth by the plaintiff is based upon the proposition that a contract for the erection of an ore tramway in connection with a railroad bridge, which called for a construction having a span of 193 feet and a weight of 190 tons, is not binding upon the plaintiff, who, at defendant's instance and request, erected a different structure, having a span of 243 feet and a weight of 290 tons. There was, in consequence, no contract governing what the parties did, and plaintiff may recover on the implied contract of the defendant to pay quod quantum meruit.

The only basis of plaintiff's claim as pleaded is that there was no contract between the parties, other than this implied quantum meruit one. The broad general principle, that, in the absence of an agreement upon price, material supplied and work done upon request is to be paid for in accordance with an implied promise to pay upon a quantum meruit basis, must be accepted. The only question is whether in a given case the principle is applicable.

The instructions given the jury were based upon the following propositions:

(1) Where material, without limitation in quantity, is contracted to be supplied as ordered at a unit weight price, and is supplied on such order without other contract between the parties, the contract price applies to all the material supplied.

(2) The above principle is applicable, notwithstanding the further fact that the material was to be fabricated and erected, and at the time of the contract there was in the contemplation of the parties a structure of less dimensions and weight than the one afterwards erected; the contract made being without limitation of material or work, and the unit market price value being, under the usages and practice of the trade, unaffected by such an increase in quantity.

The case of the plaintiff in chief disclosed the following facts, concerning which, on the motion for binding instructions, there was no dispute:

(1) A contract in writing was entered into by the parties, the terms of which are set forth in the acceptance of March 7, 1916.

(2) The railroad bridge construction then in contemplation called for a span of 193 feet and a weight of about 190 tons.

(3) The construction afterwards erected required a corresponding span of 243 feet and a weight of 290 tons.

(4) The plaintiff supplied the material and did the fabricating and erecting work of the kind called for by the contract, and completed the enlarged structure without objection or complaint.

(5) The contract made one-half the contract price payable when the material was delivered at the work. The plaintiff billed the material when thus delivered at the contract price, and demanded and received payment therefor.

(6) There was evidence that the material supplied and work done on a quantum meruit basis was of greater value than the contract price, but the plaintiff on the basis of a contract price had been paid in full.

(7) Under the usages, practices, and customs of the trade, the value of material and work of the kind called for by this construction was measured in units of weight, irrespective otherwise of quantity, and plaintiff's evidence of the value of the whole construction was based upon this theory of value.

(8) The claim of the plaintiff, as set forth in the statement of claim and evidence, was not for the material and work in the contemplation of the parties at the time of the contract price and for the additional material and work on a quantum meruit, but for the whole construction as if erected at the request of the defendant, in the absence of any other than this implied contract.

The following narrative statement of the facts disclosed at the trial may aid in presenting the grounds of the ruling made:

The defendant had a contract with a railroad company for a railroad construction. This included a bridge calling for an ore tramway and of dimensions requiring a span of 193 feet and a total weight of about 190 tons. A blueprint of the plan of the bridge, showing its general construction and the kind and approximate sizes of the material for the tramway construction, was submitted to the plaintiff, and it was invited to make a proposal covering the material and the fabricating and erecting work for the tramway. The plaintiff offered to do the work at a unit of weight price. The parties had some correspondence; the negotiations finally resulting in an acceptance of the proposal and order to go ahead with the work. This acceptance was in writing under date of March 7, 1916. It set forth the full terms of the agreement, the salient points of which were that the plaintiff was to supply the material and do the fabricating and erecting work to build an ore tramway in accordance with such plans and directions as the defendant might furnish and give, at the price of $4.95 per 100 pounds, one-half payable when the material was delivered on the ground, and the balance after completion and acceptance. There was no limitation in quantity of material or work, but the acceptance set forth that it was in accordance with the previous correspondence, which mentioned a bridge span of "about" 193 feet, and the blueprint giving approximate sizes of material. Shortly after this the railroad company definitely decided upon an enlarged bridge, and increased the span to 243 feet. No specific notice of this was given to the plaintiff, except as indicated by the specifications for ma-

terial and the plans for the work. The plaintiff delivered the material at the work and demanded one-half the contract price. After some dispute over the weights, the defendant made payment. This covered all material which went into the bridge. The plaintiff completed the construction without objection or complaint because of the increased span. The work was accepted as performance of the contract, but as the parties had disputes over claims for damages growing out of delays in construction, payment of the balance of the contract price due was made without prejudice to the claim of either to such damages. No demand was at the time made for an increased price for the work done. Subsequently the present action was brought.

The trial ruling made under the facts above outlined was that the plaintiff was held to the contract price. It is of no practical importance whether this is properly based upon the finding that the contract was for the fabricated material in $4.95 per 100 pounds, whatever the weight, or upon the finding that, the plaintiff having agreed to furnish such material at a price, additional material furnished by the plaintiff without objection was furnished under the implied promise of the defendant to pay the same price. The doctrine that a change in the subject-matter of a contract, as the common phrase expresses it, "breaks the contract," is an accepted, because necessary, doctrine, when the principle upon which it rests applies. Whatever work is done or materials are supplied, if not done or supplied at an agreed price, must necessarily be priced on a quantum meruit. The doctrine does not apply, however, when the subject-matter of the contract can be found in what is performed, and the change is only by way of addition of other work or material.

The familiar cases of contract price and "extras" arise from this. The "extras" only are the subject of the implied contract, and necessarily so, because the contract price for one thing cannot measure a different thing. When, however, the change is only by way of additional units, the contract price governs. There is, of course, no obligation to supply more than called for by the contract; but, if what is supplied is nothing more than additional units of the things contracted for, the fair implication is the parties have agreed to change the subject-matter of the contract, or there is an implied agreement on the same price.

The doctrine of implied contracts is an equitable doctrine, and is governed by equitable principles. No one, of course, can be required to do at a contract price more than he had agreed to do; but if he willingly exceeds his contract obligation, by doing something which the contract price fairly measures, he has no equity to compel the other party to pay more than the price agreed upon. If he is unwilling to exceed his contract obligations on the contract terms, he has only to say so; but, if he is willing, he may, and his doing it justifies the finding of his agreement so to do. It is again, of course, that, if the contract price cannot be applied to what is done beyond the contract, it is necessary, as well as equitable, to resort to an implied quantum meruit contract; but, where the contract price can be so applied, it is neither necessary nor equitable to imply a contract to pay a different price.